IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JIMMY KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:15-cv-2310-LSC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.   Introduction

The plaintiff, Jimmy Kelly, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), who issued a partially favorable decision on his applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Mr. Kelly timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Kelly was fifty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 26, 149, 156.) He has a marginal education and past work as a maintenance mechanic and heavy equipment operator. (Tr. at 20,

1

207, 213, 227-31.) Mr. Kelly claims that he became disabled on December 18, 2013, due to lower back pain resulting from degenerative disc disease and lumbar stenosis. (Tr. at 38, 149, 156.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

If the plaintiff is found disabled at any point in the process, a determination must also be made as to whether his disability continues through the date of the decision. In order to show that a plaintiff's disability does not continue through the date of the decision, the evaluator must show that a medical improvement has occurred which is related to the plaintiff's ability to work. *See* 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(b)(1)-(3). In making this determination, the evaluator must follow an eight-step process for determining whether disability benefits should be terminated due to medical improvement. Those steps are:

> (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (*see* paragraph (d)(5) of this section).
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, *see* step (4). If there has been no decrease in medical severity, there has been no medical improvement. (*See* step (5).).

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, *see* step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, *see* step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (*see* § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, *see* step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities

to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f).

Applying the sequential evaluation process applicable to this case, the ALJ first found that Mr. Kelly meets the insured status requirements of the Social Security Act through December 31, 2017. (Tr. at 17.) He further determined that Mr. Kelly has not engaged in SGA since December 18, 2013, the date he became disabled. (*Id.*) According to the ALJ, from December 18, 2013, through June 8, 2015, the period during which Plaintiff was under a disability, he had the "severe" impairment of "history of lumbar spinal fusion at L3-4 and L4-5 on December 6, 2014, with residuals consisting of mild to moderate pain and degenerative disc disease at L2-3 with lumbar stenosis." (*Id.*) However, he found that during that time, this impairment neither met nor medically equaled the severity of any of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18.) The ALJ determined that from December 18, 2013 through June 8, 2015, Mr. Kelly had the RFC to perform sedentary work except residuals from his back surgery would preclude him from performing any significant standing, walking or sitting sufficient to enable him to complete a standard eight hour work day. (Tr. at 19.) According to the ALJ, from December 18, 2013, through June 8, 2015, Mr. Kelly was unable to perform any of his past relevant work. (Tr. at 20.) He determined that Mr. Kelly was an individual closely approaching advanced age, had a marginal education, and could communicate in English, as those terms are defined by the regulations. (*Id.*) He determined that Plaintiff's job skills did not transfer to other occupations within the RFC that he assigned. (*Id.*) The ALJ concluded that considering Plaintiff's age (closely approaching advanced), education (marginal), work experience (no job skills that would transfer), and RFC (sedentary), Medical Vocational Rule 201.10 directed a finding that Plaintiff was disabled from December 18, 2013, through June 8, 2015. (*Id.*) Thus, the ALJ concluded that Plaintiff was under a disability within the meaning of the Act from December 18, 2013, through June 8, 2015. (Tr. at 21.)

However, because the ALJ determined that a medical improvement had occurred subsequent to Plaintiff's period of disability and prior to his decision, the ALJ moved on to the eight-step sequential evaluation process used in "medical

improvement" cases. The ALJ first noted that Plaintiff has not developed any new impairments since June 9, 2015, the date his disability ended, so his current severe impairment is the same as that that was present from December 18, 2013, through June 8, 2015. (*Id.*) The ALJ then stated that since June 9, 2015, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) According to the ALJ, medical improvement occurred as of June 9, 2015, the date Plaintiff's disability ended. (*Id.*) The ALJ found that the medical improvement that has occurred is related to Plaintiff's ability to work because there has been an increase in Plaintiff's RFC. (Tr. at 22.) The ALJ found that as of June 9, 2015, Plaintiff has had the RFC to perform the full range of light work. (*Id.*) The ALJ found, however, that Plaintiff is still unable to perform his past work. (Tr. at 24.) The ALJ noted that Plaintiff's age category and education level has not changed since June 9, 2015. (Tr. at 25.) He found that Plaintiff has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case. (*Id.*) The ALJ determined that because Plaintiff can perform a full range of light work as of June 9, 2015, Medical-Vocational Rule 202.11 which directed a finding that Plaintiff is not disabled. (*Id.*) The ALJ concluded that Plaintiff's disability ended June 9, 2015. (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Mr. Kelly alleges that the ALJ's decision should be reversed and remanded because the ALJ improperly found that he is capable of performing light work as of June 9, 2015, by relying solely on the opinion of Plaintiff's treating orthopedic surgeon, Dr. Scott Hodges.

The SSA regulations dictate that an ALJ *must* give controlling weight to a treating physician's opinion if medically acceptable clinical and laboratory diagnostic techniques support it and it is not inconsistent with the other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2p. The Eleventh Circuit has echoed this mandate, holding

that a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).

Dr. Hodges, a board certified orthopedist with more than twenty-five years of experience, is Plaintiff's treating physician. Dr. Hodges performed a lumbar fusion on Plaintiff's spine on January 6, 2014, and continued to see him for follow-ups thereafter. (Tr. at 564, 655-58). On June 9, 2015, eighteen months after surgery, Mr. Kelly came in for a follow-up appointment. (Tr. at 1664-65). Dr. Hodges's examination findings on that date revealed that Plaintiff's gait, station, and lower extremity motor strength were normal and sitting straight bilateral leg raises were negative. (*Id.*) During the same examination, Mr. Kelly reported that his current pain level was a five out of ten, and he felt sixty percent improvement since his last visit two months prior. (*Id.*) Mr. Kelly reported that he was taking his Percocet (10mg) every four hours, which he reported was effective in controlling his pain. (*Id.*) Dr. Hodges noted that findings from a Magnetic Resonance Imaging ("MRI") test done on April 10, 2015, showed nothing acute. (Tr. at 1662.) Dr. Hodges opined that Mr. Kelly was at maximum medical improvement and could return to work as of that date with some restrictions. (*Id.*) Specifically, Dr. Hodges

restricted Mr. Kelly to lifting 25 pounds occasionally and 15 pounds frequently. (*Id.*) Light work under the SSA regulations involves lifting no more than 20 pounds at a time with frequent lifting or carrying of object weighing up to 10 pounds. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). In addition to releasing Mr. Kelly to light-level work, Dr. Hodges indicated that follow-up appointments would only be scheduled as needed. (Tr. at 1665.)

The ALJ gave great weight to the opinion of Dr. Hodges that Plaintiff could return to work as of June 9, 2015, because it was "based upon a history of treatment and consistent with objective medical findings [such] as physical examinations and an MRI." (Tr. at 23.)

Plaintiff argues that Dr. Hodges's opinion on June 9, 2015, was contrary to various treatment notes of Donna Pearson, Dr. Hodges's physician's assistant ("PA"), dated January 30, 2014, January 23, 2015, March 20, 2015, April 17, 2015, and July 10, 2015. (Tr. at 1661, 1667-74, 1690.) However, the treatment notes of Dr. Hodges's PA do not erode the validity of Dr. Hodges's assessment that Plaintiff could perform light work. As an initial matter, unlike a board-certified orthopedic surgeon, a PA is not an acceptable medical source pursuant to the regulations. *See* C.F.R. §§ 404.1513, 404.1527, 416.913, 416.927; SSR 06-03p. As an "other source," the ALJ must still consider the PA's opinion and assess how much weight

to afford it based on any applicable factors described in the regulations; however, an ALJ is not required to give the opinion of an "other source" any special weight. *See* 20 C.F.R. §§ 404.1527(d), 404.1513, 416.927(d), 416.913. On January 30, 2014, and April 17, 2015, the PA wrote that Mr. Kelly was permanently unable to work and "will need disability." (Tr. at 1668, 1690). However, the former visit was immediately after his back surgery, and the latter did not include a physical examination of his spine. (Tr. at 1668, 1689.) Finally, during an appointment on July 10, 2015, Dr. Hodges's PA reported that Plaintiff can return to work and perform modified duties, consistent with Dr. Hodges's findings on June 9, 2015. (Tr. at 1662.)

Plaintiff also argues that Dr. Hodges's opinion contradicts the opinion of his treating pain specialist, Dr. Calhoun. On August 20, 2014, Dr. Calhoun testified that Kelly will never be able to return to work, regardless of the type of work. (Tr. at 1123-24). However, the ALJ properly declined to accept this opinion because it was made long before Dr. Hodges pronounced Mr. Kelly to be at maximum medical improvement and, in any event, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a

case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Finally, Plaintiff argues that Dr. Hodges's opinion contradicts his own subjective complaints of pain. At the hearing, Mr. Kelly testified he experiences pain daily that is at least an eight out of ten in severity. (Tr. at 52). He takes Percocet and Cymbalta for his pain (tr. at 52-53), which leave him feeling "fuzzy headed all the time." (Tr. at 53). Mr. Kelly further testified that he can only lift ten pounds or less, and that there are days he hurts so badly he cannot leave the house. (Tr. at 55.) However, the ALJ found Plaintiff not entirely credible for several reasons that are supported in the record: among them the fact that at his hearing, Plaintiff testified that he was illiterate, but he has a history of skilled work and the record does not show that he alleged illiteracy as an impairment; and the fact that Plaintiff did not complain about medication side effects at any of his appointments

with Dr. Hodges in June or July 2015. Plaintiff has not challenged the ALJ's credibility determination on appeal.

The Commissioner, and at the hearing level the ALJ, has the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). Even if a court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, the decision must be affirmed where it is supported by substantial evidence in the record as a whole. *See Baker o/b/o Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989). In this case, substantial evidence and proper legal analysis supports the ALJ's decision that Plaintiff experienced medical improvement as of June 9, 2015.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Kelly's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 27, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704